IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| POLAROID CORPORATION, et al. | : | Case No. 01-10864 (PJW) |
|  | : | Jointly Administered |
| Debtors. | : |  |
| IAN J. SHIERS, | : |  |
| Plaintiff, | : |  |
| v. | : | Adv. Proceeding No. |
| POLAROID CORPORATION, | : |  |
| Defendant. | : |  |

## COMPLAINT

Ian J. Shiers ("Shiers") hereby sets forth his Complaint for a declaratory judgment and for certain other relief and in support thereof avers as follows:

## The Parties

1. Plaintiff Ian Shiers is an individual residing in the Commonwealth of Massachusetts.

2. Upon information and belief, Polaroid Corporation ("Polaroid") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the Commonwealth of Massachusetts.

## Jurisdiction and Venue

3. On October 12, 2001 (the "Petition Date"), the debtors (the "Debtors") in the above matter, including Polaroid, each filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed in the Debtors' chapter 11 cases. On October 23, 2001, an official committee of unsecured creditors was appointed.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Factual Background

### The Employment Agreement

6. Effective December 1, 2000, Shiers and Polaroid entered into an Employment Agreement. A true and correct copy of the Employment Agreement is attached hereto as Exhibit "A" and made a part hereof.

7. The Employment Agreement states, among other things, that if Shiers' employment is terminated by Polaroid without cause or Shiers terminates his employment following a Constructive Termination, Shiers shall be entitled to (i) his base salary through the termination date; (ii) annual bonus payments for the period from the beginning of the year, 2002, through the end of the Severance Period; and (iii) Shiers' base salary at the annualized rate in effect on the date of the termination of his employment for the Severance Period.

8. As defined, the "Severance Period" is a period of twenty-four months following the termination of Shiers' employment.

9. As defined, "Constructive Termination" means (i) the reduction in Shiers' job title or level as Executive Vice President; (ii) a change in Shiers' reporting relationship to anyone other than Polaroid's Chief Executive Officer or the provision of significantly less favorable working conditions; or (iii) unless affected with Shiers' consent, a reduction in Shiers' base salary or the discontinuation or any reduction in Shiers' participation or membership in any bonus, incentive or other benefit plan in which Shiers was a participant or member without an economically equivalent replacement.

10. The Employment Agreement also states that it shall be governed by, construed and interpreted in accordance with, the laws of the Commonwealth of Massachusetts, without reference to principles of conflict of laws.

**The Promissory Note**

11. On or about February 15, 2001, Shiers executed a Promissory Note (the "Note") to the order of Polaroid in the original principal amount of $380,000. The Note is secured by a second mortgage (the "Mortgage") on Shiers' residence in Brookline, Massachusetts (the "Residence"). A true and correct copy of the Note is attached hereto as Exhibit "B" and made a part hereof.

12. The Note states that:

> *if at any time [Shiers] terminates employment with [Polaroid] or a subsidiary following a Constructive Termination, as defined below, or is terminated by [Polaroid] prior to the Maturity Date for any reason other than for Cause as defined in the Employment Agreement between [Shiers] and [Polaroid], the entire outstanding balance of this note shall be reduced and forgiven without payment and shall be deemed to be repaid in full without any payment by [Shiers] . . . Constructive Termination shall mean (i) the reduction in [Shiers'] job title or level as Executive Vice President; (ii) a change in the [Shiers'] reporting relationship to anyone other than the Chief Executive Officer; or the provision of significantly less favorable working conditions; or (iii) unless effected with [Shiers'] consent, a reduction in [Shiers'] Base Salary or the discontinuation or any reduction in [Shiers'] participation or membership in any bonus, incentive or other benefit plan in which [Shiers] was a participant or member, without an economically equivalent replacement.*

## The Issue of Constructive Termination and the Prepetition Retirement Plan

13.  Among the "bonus, incentive or other benefit plan[s]" in which Shiers was a "participant or member" (within the meaning of the Note and the Employment Agreement) was a Deferred Compensation - Supplemental Executive Retirement Plan (the "Prepetition Retirement Plan"). Under the Prepetition Retirement Plan, Polaroid was required to make contributions of $70,000 into the Prepetition Retirement Plan, "each year".

14.  Prior to the Petition Date, Polaroid advised Shiers that the Prepetition Retirement Plan was terminated. Such termination would give rise to a "Constructive Termination" under the Note and the Employment Agreement and would require the Debtors, upon Shiers' terminating his employment, to satisfy the Note.

15.  However, after the Petition Date, Polaroid stated that the Prepetition Retirement Plan would be reinstated. Despite repeated requests by and on behalf of Shiers, the Debtors refused to confirm that the Prepetition Retirement Plan had been reinstated and to provide documentary evidence that Polaroid had made the $70,000 contribution for the years 2000 and 2001.

16.  On January 15, 2002, counsel for Shiers wrote a letter (the "January 15 Letter") to Neil D. Goldman, Esquire, Polaroid's General Counsel ("Goldman"), to determine the status of the Prepetition Retirement Plan. The January 15 Letter also requested "written confirmation and supporting documentation regarding (i) the plan to which the [$70,000] contribution has been made; and (ii) the actual contribution." A true and correct copy of the January 15 Letter is attached hereto as Exhibit "C" and made a part hereof.

17. On January 25, 2002, Goldman wrote a letter (the "January 25 Letter") to acknowledge that the Prepetition Retirement Plan had been terminated in August 2001. However, he contended that Polaroid had promptly established a "Supplemental Executive Retirement Program" for Shiers, which "we *will* fund at a rate of $70,000 per year as set out in his current [E]mployment [A]greement" (emphasis added). A true and correct copy of the January 25 Letter is attached hereto as Exhibit "D" and made a part hereof.

18. Polaroid has never assumed the referenced "Employment Agreement" and has never sought nor obtained authority to make a $70,000 payment into any "Supplemental Executive Retirement Program."

**The Issue of Constructive Termination and the Prepetition Retention Agreement**

19. Among the "bonus, incentive or other benefit plan[s]" in which Shiers was a "participant or member" (within the meaning of the Note and the Employment Agreement) was a Prepetition Retention Agreement dated August 1, 2001 (the "Prepetition Retention Agreement"). A true and correct copy of the Prepetition Retention Agreement is attached hereto as Exhibit "E" and made a part hereof.

20. Among the benefits under the Prepetition Retention Agreement is a Retention Bonus of "15 month Base Pay and 125% of Your Target Amount Bonus".

21. The first payment to Shiers under the Prepetition Retention Agreement was due March 1, 2002.

22. On November 21, 2001, the Debtors filed a Motion for an Order Under 11 U.S.C. §§ 105(a) and 363(b)(1) Authorizing Implementation Key Employee Retention Program [Docket

No. 266]. To date, the Debtors have not obtained authority to implement the "Key Employee Retention Program."

23. On January 3, 2002, Goldman advised Shiers and others that the Debtors were pursuing implementation of the Key Employee Retention Program. Goldman also advised, in writing, that "prior retention agreements are pre-petition debt, the new retention program is intended to replace the old programs and *prior agreements will not be honored.*" (emphasis added).

24. In the January 15 Letter, counsel for Shiers therefore stated: "It has occurred to Ian [Shiers] that there have occurred other events constituting constructive termination including communication to him of Polaroid's intention to not comply with the terms of the August 1, 2001 Retention Agreement between Ian and Polaroid [i.e. the Prepetition Retention Agreement] which was entered into, in good faith, by Ian."

25. In response, Goldman, in the January 25 Letter stated: "[w]e have not communicated to Mr. Shiers that we do not intend to comply with the retention agreement. As with other employees who are similarly situated, we have informed him that this agreement is a prepetition contract. To date, Polaroid has not repudiated the retention agreement with Mr. Shiers."

## The Dispute Over Shiers' Employment Status

26. In the meantime, Shiers had signed a Purchase and Sale Agreement, pursuant to which he was to sell the Residence, about which he informed Polaroid. In connection with the sale of his Residence, he was required to satisfy the Mortgage and Note. However, if he was to satisfy the Note and Mortgage, he would have been unable to obtain the benefit of the provisions

of the Note and the Employment Agreement which required the Note to be satisfied upon Shiers' Constructive Termination and subsequent resignation.

27. Shiers, therefore, faced an unfair dilemma. On the one hand, Shiers believed and asserted that he had been subjected to a Constructive Termination which, if accurate, and in accordance with the Note, would have required that Shiers terminate or resign his employment with Polaroid. On the other hand, Polaroid denied that Shiers had been constructively terminated, but refused to demonstrate to Shiers that Polaroid had replaced the Prepetition Retirement Plan and the Prepetition Retention Agreement with an "economically equivalent replacement" as required by the Note and the Employment Agreement. Furthermore, while Shiers was prepared to tender his resignation, if he were to do so and demand that the Note be satisfied, the Debtors might thereafter have decided to reveal to him a purported reinstatement of the Prepetition Retirement Plan and the Prepetition Retention Plan and refuse to satisfy the Note and Mortgage. If Shiers were not to terminate his employment and satisfy the Note, he might have been unfairly deprived of his right to have Polaroid satisfy the Note.

28. Polaroid was aware of Shiers' dilemma and made every attempt to obscure from Shiers' the true status of his employment. The Debtors have never obtained authority to pay the annual $70,000 contribution into the Prepetition Retirement Plan required to be made "each year". Upon information and belief, the Debtors had no intent to do so in the future. Likewise, it is clear from the Debtors' filings in this case and from Goldman's communications, that the Debtors had no intention of ever honoring the Prepetition Retention Agreement.

29. The Debtors have acted in bad faith in an attempt to deprive Shiers of his rights under the Note and the Employment Agreement.

30. Therefore, on January 25, 2002, Shiers submitted to Polaroid's President and Chief Executive Officer, Gary T. DiCamillo (to whom Shiers reported), his conditional resignation. A true and correct copy of the conditional resignation letter is attached hereto as Exhibit "F" and made a part hereof.

31. Also, in order that Shiers' status be determined, Shiers filed a Motion to Compel the Debtors to Advise Him of His Employment Status with this court requesting, among other forms of relief, that the Debtors advise Shiers of his employment status (i.e. whether Shiers had been subjected to a Constructive Termination) and that pending such determination, the amount otherwise calculated under the Note be deposited into an escrow account. Shiers' actions were undertaken in an effort to prejudice neither himself nor Polaroid pending this court's determination of his employment status.

32. In response to Shiers' actions, Polaroid unfairly and unlawfully seized upon Shiers' conditional resignation declaring that he was not permitted conditionally to resign and purporting to "accept" his unconditional resignation effective January 29, 2002. In other words, Polaroid terminated Shiers' employment.

33. Polaroid's actions constitute a termination of Shiers' employment without Cause under the Employment Agreement.

34. Polaroid's actions constitute a breach of the covenant of good faith and fair dealing.

35. Polaroid's actions constitute the wrongful termination of Shiers' employment in violation of public policy.

## Requests For Relief

36. Based upon the foregoing, the Court should therefore enter an Order determining that Shiers has been subjected to a Constructive Termination within the meaning of the Note and that the Note and Mortgage shall be deemed satisfied.

37. Further, based upon the foregoing, the Court is requested to award Shiers damages:

   (i) on account of Shiers' Constructive Termination, in such amounts representing Shiers' Annual Bonus through January 29, 2004; Shiers' annualized Base Salary as in effect on the date he was constructively terminated through January 29, 2004; and such other amounts to compensate Shiers for the entitlements and benefits to which he is entitled under the Employment Agreement upon his Constructive Termination;

   (ii) on account of Shiers' termination without Cause, in such amounts representing Shiers' Annual Bonus through January 29, 2004; Shiers' annualized Base Salary as in effect on the date he was terminated through January 29, 2004; and such other amounts to compensate Shiers for the entitlements and benefits to which he is entitled under the Employment Agreement upon his termination without Cause;

   (iii) on account of Shiers' termination without Case, an Order determining that the Note and Mortgage shall be deemed satisfied in accordance with the Note (which provides for the Note and the Mortgage to be deemed satisfied in the event Shiers was terminated by Polaroid "for any reason other than for Cause as defined in the Employment Agreement");

(iv) such other damages, including those for emotional distress, as the Court deems just.

*[signature]*

Michael R. Lastowski (DE I.D. No. 3892)
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 657-4942
Facsimile: (302) 657-4901
E-mail: mlastowski@duanemorris.com

-and-

Mary E. O'Neal
Masterman, Culbert & Tully LLP
One Lewis Wharf
Boston, MA 02110
Telelphone: (617) 227-8010
Facsimile: (617) 227-2630

Counsel for Plaintiff Ian J. Shiers